John T. ABELES, Appellant,

v.

Hugo WURDACK, Evelyn Wurdack, Sidney Strauss, Roy Graham and Mildred Graham, Respondents.

No. 44219.

Supreme Court of Missouri.

Division No. 2.

Dec. 12, 1955.

Rehearing Denied Jan. 9, 1956.

J. L. London, Joseph J. Howard, Cook, Fairfield, Howard & Murphy, St. Louis, of counsel, for appellant.

Israel Treiman, Lashly, Lashly & Miller, St. Louis, for defendants-respondents.

STOCKARD, Commissioner.

This is an appeal from an order dismissing the petition in a suit on quantum meruit on the ground of res judicata. The parties will be designated as in the trial court.

In March of 1948 the plaintiff herein filed suit against all of the defendants in the present suit, and also against Automatic Firing Corporation, seeking recovery of a commission alleged due him pursuant to an express contract. Trial was had without a jury and no request was made by any party before final submission of the case that the trial court prepare and file a brief opinion containing a statement of the grounds for its decision and findings on any of the principal controverted fact issues. A general judgment was entered for all defendants. On its own motion, the trial court then set aside the general judgment while it still retained control thereof, and entered "Findings of Fact and Conclusions of Law" and the judgment that "in accordance with the aforesaid Findings of Fact and Conclusions of Law" the plaintiff take nothing. No appeal was taken from that judgment.

Plaintiff then filed the present suit in quantum meruit against the same individual defendants but not against the Automatic Firing Corporation. He alleged that at the special instance and request of the defendants he performed services in assisting them in selling shares of the capital stock of Stok-A-Fire Co., Inc. (Automatic Firing Corporation is the successor of Stok-A-Fire Co., Inc., and both will hereafter be referred to as Stok-A-Fire Co.); that pursuant to said employment he produced a purchaser ready, willing and able to purchase said stock; that on March 18, 1946, defendants entered into an oral agreement with said purchaser for the sale of the stock; and that the reasonable value of his services was $13,500. Defendants filed a general denial and also pleaded the affirmative defense of res judicata. At the end of the appellant's evidence the trial court discharged the jury and dismissed the petition on the grounds of res judicata, and this appeal resulted.

In order to understand the contentions of the parties, it is necessary to set out

briefly the evidence of plaintiff in this case. In January 1943 Roy Graham and Sidney Strauss, two of the defendants, requested plaintiff to sell "some of their stock" in Stok-A-Fire Co. on a commission basis of five per cent, but because of the economic conditions resulting from the war, plaintiff "wasn't able to accomplish anything." Right after the surrender of Germany in 1945, Graham and Strauss asked plaintiff "to go after this and see if a deal can be made," and it was proposed that he sell the "control of all the stock" of Stok-A-Fire Co. Plaintiff said he wanted to think it over and investigate conditions, and he later came to the conclusion that "we had better wait." In October of 1945 plaintiff found the conditions had changed favorably and he so informed Graham and Strauss who said, "Go ahead." In the late fall of 1945 plaintiff contacted Mr. Robert Matthews of G. H. Walker & Co., an underwriting house, and in January 1946 plaintiff told Graham that G. H. Walker & Co. wanted "something more of a definite proposition." Plaintiff then wrote a letter to Graham dated January 11, 1946, in which he outlined the "kind of deal with terms included" which he felt confident could be worked out. This "deal" provided for the recapitalization of Stok-A-Fire Co. and the sale to an underwriting house of the controlling interest of the voting stock and some of the non-voting stock. Plaintiff suggested a fee of $20,000 for "working out this deal in its entirety." This proposal was accepted by the defendants by letter dated January 21, 1946, but it is admitted that plaintiff did not perform pursuant to this contract.

In March 1946 plaintiff was notified that Mr. Wurdack, one of the defendants and president of Stok-A-Fire Co., had taken over the negotiations with G. H. Walker & Co. Strauss and Graham then told plaintiff, "You stand exactly where you stood before; you are being taken care of." Later Graham told plaintiff that Wurdack had refused to sell "control of the voting stock," but that he would go along on "a deal" which did not involve this provision. Plaintiff immediately contacted Matthews who told him that G. H. Walker & Co. would be willing to underwrite such "a deal" and plaintiff so advised Graham and Strauss. On March 18, 1946, a meeting was held between representatives of G. H. Walker & Co. and all the officers of Stok-A-Fire Co. Plaintiff was invited to be present, but when he arrived he was asked to wait outside the conference room. He was later told that the parties were in complete agreement, and "had made a deal." By mutual agreement between the defendants and G. H. Walker & Co., the plan approved on March 18 was never carried out. In 1947 an agreement was reached between the defendants and two underwriting houses whereby capital stock of Stok-A-Fire Co. was sold pursuant to a plan different from any of the previous plans.

In the previous suit on an express contract plaintiff sought a commission of five per cent of the total sale price of the stock sold pursuant to the 1947 transaction. In the present suit on quantum meruit plaintiff contends that he is entitled to the reasonable value of his services in producing a purchaser ready and able to purchase the stock proposed to be sold pursuant to the agreement reached on March 18, 1946. The defendants contend that the doctrine of res judicata prevents the maintenance of the present suit because certain findings adverse to plaintiff in the previous suit on the express contract are conclusive in the instant action.

■ A former adjudication on the same cause of action between the same parties is conclusive in the second proceeding as to every issue of fact which was or might have been litigated in the first, under what is called estoppel by judgment. A judgment between the same parties on a different cause of action is binding as to the facts actually decided, and necessarily determined in rendering the judgment, under what is called estoppel by verdict. State ex rel. Gott v. Fidelity & Deposit Co. of Baltimore, Md., 317 Mo. 1078, 298 S.W. 83. The suit on the express contract was based upon a different cause of action from

that of the instant suit upon quantum meruit. The contracts upon which the claims are based are different, and it matters not that they both seek to recover for the same article, that is, services. Pemberton v. Ladue Realty & Const. Co., 359 Mo. 907, 224 S.W.2d 383; Broz v. Hegwood, 349 Mo. 920, 163 S.W.2d 1009; Perry v. First Nat. Bank, 230 Mo.App. 374, 91 S.W.2d 78; Fritsch Foundry & Machine Co. v. Goodwin Mfg. Co., 100 Mo.App. 414, 74 S.W. 136; Restatement, Judgments, § 65; 50 C.J.S., Judgments, § 649. Therefore, the judgment in the suit by plaintiff on the express contract is res judicata as to those questions, points or matters of fact in issue which were essential to a decision in that case, and upon the determination of which the judgment was entered, but not to other issues. Larsen v. Northland Transp. Co., 292 U.S. 20, 54 S.Ct. 584, 78 L.Ed. 1096; United States Fidelity & Guaranty Co. v. McCarthy, 8 Cir., 33 F.2d 7, 70 A.L.R. 1447; Case v. Sipes, 280 Mo. 110, 217 S.W. 306; State ex rel. Buchanan County v. Patton, 271 Mo. 554, 197 S.W. 353; Kimpton v. Spellman, 351 Mo. 674, 173 S.W.2d 886; Scheer v. Trust Co. of St. Louis County, 330 Mo. 149, 49 S.W.2d 135; Laughlin v. Boatmen's Nat. Bank of St. Louis, 354 Mo. 467, 189 S.W.2d 974; In re Delany's Estate, Mo.Sup., 258 S.W.2d 613; Restatement, Judgments, § 68; 50 C.J.S., Judgments, § 712; 30 Am.Jur. § 178. Such prior adjudication may be of a single fact. In re Guardianship of McMenamy, 307 Mo. 98, 270 S.W. 662; In re Delany's Estate, supra. And it makes no difference that all the parties of the prior litigation are not parties to the instant action. Young v. Byrd, 124 Mo. 590, 28 S.W. 83; Nave v. Adams, 107 Mo. 414, 17 S.W. 958.

At the outset we are faced with the contention of plaintiff that the judgment in the suit on the express contract was a general judgment, and therefore is not conclusive as to any particular fact issue, and also that the so-called findings of fact and conclusions of law cannot be examined in order to determine what questions of fact were actually determined because the findings were not requested by any party before final submission.

Section 510.310, RSMo 1949, V.A.M.S., does not by its terms prohibit a trial court from voluntarily making a statement of the grounds for its decision and findings on the principal controverted fact issues. State at Information of Dalton ex rel. Tucker v. Mattingly, Mo.App., 275 S.W.2d 34; Pudiwitr v. Soloman, Mo. App., 224 S.W.2d 562. When it does not appear from the pleadings what matters were litigated and determined by the judgment, "extrinsic evidence is admissible to show what matters were in fact litigated and determined." Restatement, Judgments, § 68. See also Jungeblut v. Maris, 234 Mo. App. 288, 130 S.W.2d 681; Stoner v. New York Life Ins. Co., 232 Mo.App. 1048, 114 S.W.2d 167; Perry v. First Nat. Bank, 230 Mo.App. 374, 91 S.W.2d 78; 50 C.J.S., Judgments, § 843b; The Evergreens v. Nunan, 2 Cir., 141 F.2d 927, 152 A.L.R. 1187; 2 Freeman, Judgments, 5th ed., § 771. In State at Information of Dalton ex rel. Tucker v. Mattingly, supra, the court examined the voluntary findings of fact by the trial court in a previous suit, which had been made a part of the record of the subsequent suit, and thereby determined that an issue urged as res judicata had in fact not been adjudicated. Here the so-called findings of fact and conclusions of law in the suit by plaintiff on the express contract were introduced in evidence in the instant case, and we may and shall examine them to determine if a question of fact essential to the judgment in that case and constituting a bar to the instant suit was actually litigated and determined adversely to plaintiff.

In the suit on the express contract the trial court expressly found that there was no contract between the plaintiff and the defendants whereby the defendants were to pay the plaintiff a commission of five per cent of the sale price of the stock sold in the 1947 transaction, and further that the plaintiff was neither the procuring nor the inducing cause of that sale. Defendants contend that the following additional find-

ings in the suit on the express contract constitute a bar to the present suit on quantum meruit:

"6. At no time did the defendants, or any of them, request plaintiff to sell, or engage in any conversations with plaintiff regarding the sale of stock of either Stok-A-Fire or Automatic on a commission basis of 5% on the value of the stock so sold. The only conversations between the defendants, or any of them, and the plaintiff relative to plaintiffs procuring a purchaser for any of defendant's stock were those that took place in 1945, and the only agreement resulting from these conversations is that embodied in the letters of January 11 and January 21, 1946.

"7. For several months following the letter of January 21, 1946, plaintiff made efforts to carry out the obligations which he had undertaken in his letter of January 11, 1946. He was, however, entirely unsuccessful, although defendants Graham and Strauss did all they could to enable him to perform his part of the agreement. Some time in the early summer of 1946 it became evident to all parties concerned that plaintiff could not carry out his undertakings and Graham and Strauss advised the plaintiff to drop the entire plan outlined in plaintiff's letter of January 11, 1946. In this connection the Court finds that plaintiff was given a reasonable length of time in which to perform his part of the agreement before he was advised to do nothing further about it. Plaintiff did thereupon cease all further effort to carry out the agreement and made no objection whatsoever to its abandonment.

\* \* \* \* \* \*

"9. \* \* \* Plaintiff's letter to Mr. Matthews (dated March 15, 1946) shows that plaintiff was working under a contract and was standing on that contract. He enclosed with that letter a copy of the letter which he had written to Graham dated January 11, 1946, and a copy of Graham's letter in reply dated January 21, 1946. These two letters contained and constituted the contract between Abeles and the holders of the stock. \* \* \* The management of the company was the exact thing which Graham wanted to be relieved of and had persuaded the other defendant stockholders to agree upon, and was one of the paramount considerations in their employment of Abeles. \* \* \* The evidence discloses that after plaintiff had failed to perform his contract, the stockholders did not desire nor contemplate any service by him different or other than that which he had agreed to perform by his written proposal. \* \* \* It is apparent no modification of the original agreement was contemplated by Wurdack, either orally or by conduct, nor was there any thought of plaintiff extending his service toward different transactions."

When the causes of action are different, the questions, points or matters of fact in issue in a previous suit which were essential to that decision, and which were decided in support of the judgment are referred to as "ultimate facts." Other findings are referred to as "evidentiary facts." Christy v. Great Northern Life Ins. Co., 238 Mo.App. 525, 181 S.W.2d 663, Restatement, Judgments, § 68. While it is uniformly held that only an ultimate, but not an evidentiary, fact is capable of becoming res judicata, Christy v. Great Northern Life Ins. Co., supra; 142 A.L.R. Comment Note at page 1243, the difficulty lies in the application of this rule.

Some courts require that an ultimate fact be "such as is required in allegations of fact in good pleadings." Paulos v. Janetakos, 46 N.M. 390, 129 P.2d 636, 638, 142 A.L.R. 1237. This requirement is implied in Christy v. Great Northern Life Ins. Co., supra [238 Mo.App. 525, 181 S.W.2d 667], wherein it is stated that

"'matters in issue'"' do not mean evidentiary facts but ultimate facts, which latter kind of facts were pleaded in the former case. See also Meyer v. Meyer, Mo.App., 236 S.W. 382. Other courts have defined ultimate facts as those facts which are necessary or essential to the result reached. The Evergreens v. Nunan, supra; 2 Freeman, Judgments, 5th ed. § 693. In Personal Finance Co. of Missouri v. Day, Mo.App., 158 S.W.2d 197, 200, it is stated that, "The decree (in the former case) is conclusive evidence of nothing more than what was necessary for the chancellor to have found in order to arrive at his decision and to render the decree that he actually entered, and no further." See also State ex rel. Gott v. Fidelity & Deposit Co. of Baltimore, Md., supra, wherein it was stated that a judgment between the same parties on a different cause of action is binding as to facts actually decided, ultimate or supporting, necessarily determined in rendering the judgment. This is the better rule. Judge Learned Hand followed this rule in substance when he defined an ultimate fact to be "one of those facts, upon whose combined occurrence the law raises the duty, or the right, in question", and an evidentiary fact to be "a fact, from whose existence may be rationally inferred the existence of one of the facts upon whose combined occurrence the law raises the duty, or the right." The Evergreens v. Nunan, supra [141 F.2d 928].

We now examine the findings of the trial court in the suit on the express contract which are claimed by defendants to invoke the doctrine of res judicata against plaintiff in the present suit on quantum meruit.

Finding number 6 consists of two parts. The first part is that at no time did the defendants request plaintiff to sell stock, or engage in conversations with plaintiff regarding the sale of stock, of Stok-A-Fire Co. on a commission basis of 5% of the stock sold. Assuming this to be a finding of an ultimate or supporting fact necessarily determined in reaching the judgment, it does not invoke the doctrine of res judicata because the finding is limited to conversations concerning and requests to sell on a commission basis of five per cent. In the instant suit the issues are whether the defendants requested the plaintiff to assist in selling stock, and if so, the reasonable value of his services, whether more or less than five per cent.

The second part of finding number 6 is that there were no conversations between the defendants and the plaintiff except those in 1945 and that the only agreement resulting therefrom is that embodied in the letters between plaintiff and Graham. These are findings of neither ultimate nor supporting facts necessarily determined in rendering the judgment that there was no express contract covering the 1947 transaction.

Finding number 7 is concerned only with the nonperformance by plaintiff of the contract arising from the exchange of letters between him and Graham. This was not the contract on which the previous suit was brought, so these findings were not necessarily determined in arriving at the judgment in that case. Finding number 9 pertains to the activities of plaintiff concerning the contract referred to in finding number 7 and the reasons for the parties entering into it. It is also stated in this finding that the defendants did not desire nor contemplate any service different from that provided for in the written contract, and that one of the defendants did not contemplate any modification of the original contract or have any thought of plaintiff extending his services. These were supporting or evidentiary findings in that if the defendants did not desire or contemplate other services from plaintiff they probably did not request them, but these findings were not necessarily determined in reaching the judgment that the parties did not enter into an express contract covering the 1947 transaction. The issue in the previous case was not whether a request was made for services of any nature, but

only if the express contract upon which that suit was brought was entered into.

Defendants contend that plaintiff cannot recover in the present suit without proving that the written contract of employment resulting from the letters of January 11 and 21, 1946 was subsequently modified, and they quote the general rule from 12 C.J.S., Brokers, § 86, that, "the broker is not entitled to a commission on a transaction consummated by the principal where the contract of employment requires the broker to render a specific service to earn a commission and he has not rendered that service." They then contend that the fact of whether that contract was changed was litigated and determined against the plaintiff in the prior suit, because there the plaintiff proved the express contract resulting from the January letters and then attempted without success to prove that it was modified or changed. But the finding that the contract resulting from the January letters was not changed at all, while perhaps a supporting fact, was not necessarily determined to reach the judgment entered. It was only necessary to find that the contract shown by the January letters was not changed to include the 1947 transaction. It was not an issue in that case whether the contract shown by the January letters was changed or modified for any other purpose or to cover any other transaction.

Defendants also contend that the provision in Section 510.310 RSMo 1949, V.A.M.S., that "All fact issues upon which no specific findings are made shall be deemed found in accordance with the result reached" invokes the doctrine of res judicata in this case. But when the subsequent suit is on a different cause of action, this provision has reference only to fact issues, ultimate or supporting, necessarily determined in reaching the judgment, not to other findings of fact.

The judgment is reversed and the case is remanded for further proceedings consistent with the views here expressed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.